Manuel **AMADOR**, Libelant,

v.

**THE RONDA** and A/S J. Ludwig Mowinckels Rederi, Respondent-Petitioner,

and

Commercial Stevedoring Co., Inc., Respondent-Impleaded.

United States District Court
S. D. New York.

Oct. 2, 1956.

Philip F. DiCostanzo, Brooklyn, N. Y., for libellant.

Haight, Gardner, Poor & Havens, New York City, for respondent.

EDELSTEIN, District Judge.

This action was tried on remand from the Court of Appeals, Amador v. A/S J. Ludwig Mowinckels Rederi, 2 Cir., 224

F.2d 437. Libellant is a longshoreman who suffered personal injuries while working as a member of a stevedore gang discharging the vessel, and the respondent owner filed a cross-claim against the stevedoring company for indemnity. The District Court dismissed the libel on the merits and the cross-claim as moot, but on appeal the decree was reversed and libel and cross-claim were remanded for further proceedings. At the trial on remand, the libellant's claim was settled, and the issue was tried between respondent and respondent-impleaded.

The findings of fact sustained by the Court of Appeals are fully set forth in its opinion. Briefly, the vessel took aboard a cargo of steel strips at Antwerp, the stowage being to a height in excess of eight feet. Proceeding to Havre, the vessel put aboard in the same hold coils of steel wire, the height of the coils being two or three feet higher than the steel. It was known when the vessel was at Havre that the steel was to be delivered at New York and the wire coils afterwards at Baltimore. And unless the coils were moved out from under the square of the hatch before the strips were discharged, or unless they were actually discharged at New York and then reladed after the strips had been discharged, the strips would have to be discharged over the tops of the coils, the pile of which got higher and higher above the strips as the strips were progressively discharged. The coils were not moved or discharged at New York, and the method of the stevedore's operation caused collisions between the ends of the drafts of steel strips, as drafts were lifted, and the coiled wire. The libellant was injured by the dislodgement of one or several of the coils resulting from such a collision. The representative of the ship's agent had authorized the boss of the stevedoring gangs working in the hold to remove so much of the coil cargo as would at any time appear necessary to facilitate the discharge, but none of it was moved, and this despite cautionary warnings by the ship's second mate who saw the drafts hitting the coils.

Having been held liable on the ground of neglect to provide fit stowage, the respondent seeks indemnity from the stevedore on the ground of implied contract as well as express contract. While both causes of action were pressed before the Court of Appeals, that Court did not in its opinion refer specifically to the issue of implied indemnity, stating that the respondent based its claim upon an indemnity contract. It is the position of the respondent-impleaded stevedore that inherent in the decision of the Court of Appeals is a denial of the implied indemnity claim. Although I am in agreement that the decision of the Court of Appeals precludes recovery on implied indemnity, nevertheless it would in my opinion require an unwarranted inference to read that decision as having remanded merely one part of the cross-claim, in the absence of a specific direction to that effect.

Respondent relies on the recent decision of the Supreme Court in Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corporation, 350 U.S. 124, 76 S.Ct. 232. There it was held that a stevedore's undertaking necessarily includes a consensual obligation to the shipowner to perform its work in a proper and safe manner. Consequently, a stevedoring contractor is obligated to reimburse a shipowner for damages caused it by the contractor's improper performance of work. It has been held in this case that the respondent-impleaded stevedore negligently discharged the steel strip cargo, a contributing cause of the injury to libellant. Therefore, it is urged, the stevedore breached its implied obligation to do its work in a reasonably safe and proper manner and must answer over to the shipowner for indemnity.

But it seems to me that this analysis short-circuits the issue. For the Court of Appeals has held that the stowage of cargo by the respondent was only conditionally proper. " * * * [C]onsidering the position of the strips and the port to which they were consigned, they were properly stowed, only in case the coils were moved out from under the square

of the hatch before the strips were themselves discharged; or, if that was impracticable, if the coils were actually discharged at New York, and then reladed after the strips had been discharged. In short, the stowage was improper, should the strips be discharged over the tops of the coils * * *." The strips were discharged over the tops of the coils, and in these circumstances, "* * * the way they were discharged was as much a part of the stowage, as is the proximity of perishable cargo to cargo that will injure it." 224 F.2d 437, 440. Accordingly, the stowage was characterized as dangerous. And as the Court of Appeals also pointed out, "* * * the situation is to be distinguished from one in which the longshoremen were merely negligent in discharging a well stowed cargo." If the stevedore is to be held liable on an implied obligation, that obligation must have included moving the coils out from under the square of the hatch before the strips were discharged, or discharging the coils and then relading them after the strips were discharged. Such an implication would impose an obligation on the stevedore to supply the condition that would render the stowage proper; that is, the stevedore would by implication be held responsible for saving the shipowner from negligence in providing an unseaworthy ship.

■ It is arguable that the stevedore was obligated to move the coils. Under the contract, the stevedore, when "directed" by the general agent, was to shift cargo on the vessel, the necessity for which was not occasioned by its negligence, and to be reimbursed for the work. The assistant general superintendent of the ship's agent in New York " 'authorized the boss of the stevedoring gangs working in the * * * hold to remove so much of the coil cargo as would at any time appear necessary to facilitate the discharge.' " Finding of fact number 4, 224 F.2d 437, 439. And the ship's second mate, on seeing the strip drafts hitting the coils, twice warned the gang bosses to be careful, to no avail. There was, however, no direc-

tion to the stevedore to shift cargo. And I think no promise can be implied on the part of the stevedore to render the conditionally proper stowage proper. "To imply such a promise would mean that the employer agreed to protect the shipowner against liability arising out of the shipowner's own negligence. In the absence of an express promise, such an implication would be utterly unreasonable." American Mut. Liability Ins. Co. v. Matthews, 2 Cir., 182 F.2d 322, 324; see Slattery v. Marra Bros., 2 Cir., 186 F.2d 134, 139. In the circumstances of this case, it is inconceivable that the stevedore's undertaking impliedly included a consensual obligation which, in effect, relinquished the limited liability afforded it by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.

It follows that the dangerous stowage was the responsibility of the respondent not only between itself and the libellant, but also between itself and the stevedore. Therefore, I am unable to agree that respondent's negligence, as opposed to that of the respondent-impleaded stevedore, was merely "secondary" or "passive". Thus, there may be no indemnity over recoverable under the holdings of Lo Bue v. United States, 2 Cir., 188 F.2d 800; Rich v. United States, 2 Cir., 177 F.2d 688; or Palazzolo v. Pan-Atlantic Steamship Corp., 2 Cir., 211 F.2d 277, affirmed by the Supreme Court in Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., supra, on the ground of implied contract. And the primary nature of respondent's negligence prevents the possibility of full recovery over in the absence of a contractual provision requiring indemnity. See Standard Oil Co. v. Robins Dry Dock & Repair Co., 2 Cir., 32 F.2d 182; Spaulding v. Parry Navigation Co., D.C., 90 F.Supp. 564; Porello v. United States, D.C., 94 F.Supp. 952; cf., Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., supra.

■ The express indemnity provision of the stevedoring contract in this case is identical to that involved in American Stevedores, Inc., v. Porello, 330 U.S 446,

67 S.Ct. 847, 91 L.Ed. 1011, wherein the Supreme Court held the provision to be ambiguous and remanded the cause to the District Court to determine the meaning of the written contract in accordance with the intention of the parties. As the Court of Appeals pointed out in remanding this case, Porello v. U. S., 2 Cir., 153 F.2d 605, the Supreme Court obviously assumed that the contract was to be decided under the admiralty law, but that was eight years before the decision in Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337, holding that a marine insurance contract is to be construed under the law of the state where it was made. Consequently, the Court of Appeals raised the issue, which it said was far from clear, of whether the indemnity clause in the case at bar is governed by state law. Under Semanchuck v. Fifth Avenue & Thirty-Seventh St. Corp., 290 N.Y. 412, 49 N.E.2d 507, there must be an unequivocal expression of any agreement to provide indemnity for liability incurred by negligence in which the indemnitee himself shares.

■ If the issue involves a choice between the application of state law and the application of general rules of the admiralty,[1] I am of the opinion that state law must apply. In Wilburn Boat Co. v. Fireman's Fund Ins. Co., supra, the Supreme Court determined that questions concerning alleged policy breaches of a marine insurance contract are controlled by state law. The basis for the decision was that historically the states have exercised particularly broad regulatory power in relation to insurance companies and the contracts they make, and that the control of all types of insurance companies and contracts has been primarily a state function since the states came into being. The majority of the court did not agree that the demands of uniformity relevant to maritime law required the application of a single general rule of the admiralty. See concurring opinion of Mr. Justice Frankfurter, 348 U.S. 310, 321, 75 S.Ct. 368, 374, and compare dissenting opinion of Mr. Justice Reed, 348 U.S. at page 324, 75 S.Ct. at page 376.

■■ A contract for stevedoring is a "maritime" contract, Atlantic Transport Co. of West Virginia v. Imbrovek, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208; Jarka Corporation v. Hellenic Lines, 2 Cir., 182 F.2d 916. But the states have, and have had historically, the power to regulate the business and activities of stevedores and longshoremen. In New York, this power is exercised in great detail. See McKinney's Consolidated Laws of New York, Book 65, Part 2, Unconsolidated Laws, § 6700–aa et seq. In the maritime tort field, the predominance of the admiralty has been decided, in the interest of uniformity, with the pronouncement that the right of an employee of an independent contractor who is injured as a result of the negligence of the

---

1. It is not clear to me that there is a difference between the New York law and the general admiralty rule. In Shamrock Towing Co. v. Tully & DiNapoli, Inc., D.C.E.D.N.Y., 91 F.Supp. 209, affirmed on the opinion below by the Court of Appeals for the Second Circuit, Anthony O'Boyle, Inc., v. The Louis W. Doyle (The Marion E. Bulley—The Patience), 187 F.2d 872, the court in admiralty cited the rule of Mostyn v. Delaware, L. & W. R. Co., 2 Cir., 160 F.2d 15, which in turn cited and relied upon New York law. The Zeller No. 14, D.C.E.D.N.Y., 74 F.Supp. 538, applied in admiralty the rule that contracts will not be construed to indemnify a person against his own negligence unless such intention is expressed in unequivocal terms, which is also a statement of the New York rule. And in Rice v. Pennsylvania R. Co., 2 Cir., 202 F.2d 861, the Court of Appeals expressed itself to be in complete accord with the rule laid down in The Zeller No. 14. All of these cases were subsequent to the Supreme Court's ruling in American Stevedores, Inc., v. Porello, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011, which remanded an ambiguous indemnity provision to the District Court for construction in accordance with the intention of the parties. See Porello v. United States, D.C. S.D.N.Y., 94 F.Supp. 952; Muratore v. United States, D.C.S.D.N.Y., 100 F.Supp. 276; Amendola v. United States, D.C. S.D.N.Y., 74 F.Supp. 488.

shipowner and the unseaworthiness of the ship has a right to recovery "rooted in federal maritime law." Pope & Talbot, Inc., v. Hawn, 346 U.S. 406, 409, 74 S.Ct. 202, 205, 98 L.Ed. 143. But, although longshoremen perform a function which was historically that of the crew, it has not been suggested that the corporate employer of longshoremen thereby also acquires rights "rooted in the federal maritime law" in its contracts with a shipowner. Nor is it apparent what purposes of uniformity would be served by such a holding. It is true that the indemnity clause in a stevedoring contract bears upon the maritime tort problem of longshoremen and shipowner, and it would not therefore be inappropriate to analyze the clause in its setting as a maritime contract against a background of maritime practice and usage. But certainly, there is less reason for uniformity in the law governing the indemnity provision of stevedoring contracts than there is in the law governing contracts for marine insurance, whereunder a shipmaster, if the policy is subject to diverse interpretations, may encounter the greatest difficulty in knowing how to handle his vessel to preserve the insurance upon entering various jurisdictions. In this case, the stevedoring contract was entered into between corporations who had offices and were doing business within the State of New York. The contract was to be performed in New York, and any accident to a longshoreman would obviously occur in New York. The State law ought to apply.

Inasmuch as the contractual indemnity provision here has been held to be ambiguous by the Supreme Court, there may be no recovery over under New York law, which has "laid down what appears * * * to be an unswerving canon that if the indemnitee means to throw the loss upon the indemnitor for a fault in which he himself individually shares, he must express that purpose beyond any peradventure of a doubt." Mostyn v. Delaware, L. & W. R. Co., 2 Cir., 160 F.

2d 15, 19, and cases cited in note 9 therein.

But in the event that the Court of Appeals should hold it erroneous to have applied New York law instead of proceeding to interpret the contract in accordance with the intention of the parties as was done in the remand of the Porello case, 94 F.Supp. 952 (and see Muratore v. United States, 100 F.Supp. 276, and Amendola v. United States, 74 F.Supp. 488), such an interpretation would become necessary. In the interest of the completeness of the record for appellate purposes, I shall do so.

Paragraph 11 of the stevedoring contract reads as follows: "The Stevedore performing any service required by this contract shall be responsible for any and all damage or injury to persons and cargo while loading or unloading or otherwise handling or stowing the same and to any ship including its apparel and equipment, wharves, docks, lighters, elevators, cars, and carfloats used in connection therewith, through the negligence or fault of the Stevedore, his employees and servants." On behalf of the stevedore, its former president and incumbent president testified that the intent upon signing the contract sixteen years previously was to provide for liability over only on the basis of the stevedore's sole negligence. The man who signed as agent for the shipowner is dead. Moreover, the interlocking relationship of officers between the general agent for the respondent and the stevedore indicates a lack of arm's length dealing between the two. The testimony was utterly unpersuasive and I do not credit it.

Respondent argues that the stevedore's insurance coverage demonstrates the absence of intent to limit its liability, under the indemnity provision, to its own sole negligence. A letter dated August 24, 1953, from the stevedore's insurance carrier, Liberty Mutual, to the proctors for the respondent stated that the insurance company was defending the respondent-impleaded stevedore under a

certain workmen's compensation and employers' liability policy. Accordingly, respondent offered this policy in evidence at the trial, to show that the respondent-impleaded stevedore had obtained coverage not limited to its own negligence. However, the policy contains the New York Standard Endorsement, paragraph 11 of which specifically excludes coverage of any liability assumed by the stevedore under any contract. See Lo Bue v. United States, 2 Cir., 188 F.2d 800. When this exclusion was pointed out, after trial, respondent was permitted to reopen the trial to introduce a comprehensive general liability policy issued by Liberty Mutual to the respondent-impleaded stevedore, and including coverage for bodily injury liability assumed under contract. It is urged that this policy covers the stevedore's liability under the indemnity provision of the stevedoring contract, an indication of the intent of the parties to that contract. But the intent of the parties to a contract must be determined for the time of the making of the agreement, here many years prior to the date of the insurance policy. Moreover, the stevedoring contract specifically provided for a workmen's compensation policy, making no mention of a comprehensive general liability policy. And the stevedoring contract was neither declared nor endorsed on the latter policy, as were two other contracts. An audit discloses that the premium charges under the comprehensive liability policy covered only the two policies, one declared and one subsequently endorsed. It

is unlikely in the extreme that an insurance carrier would insure a contract for indemnity without charging a premium. I cannot conclude that there was any coverage of the stevedoring contract under the second policy, or, even if there was, that it is any indication of the intent of the parties to the stevedoring contract.

With the oral testimony offered by the respondent-impleaded stevedore on the intent of the parties to the stevedoring contract completely discounted, and with the finding that the two insurance policies are not relevant to the issue, the case is therefore in the same posture as were Porello v. United States, 94 F.Supp. 952, and Muratore v. United States, 100 F.Supp. 276. There is no relevant and probative evidence on the intent of the parties to the contract. If those cases authoritatively set forth the law to be applied, they must be followed. The contract in the Porello case was precisely the same as the contract in the case at bar, and I would construe the indemnity clause to cover the case where both the shipowner and the contractor are at fault toward the injured person, as did the Court of Appeals, and the District Court on remand from the Supreme Court.

However, I have determined that the respondent is not entitled to indemnity, either implied or on the basis of express contract. Accordingly, the impleading petition will be dismissed with costs.