A/S J. LUDWIG MOWINCKELS REDERI, Petitioner-Appellant,

v.

COMMERCIAL STEVEDORING CO., Inc., Respondent-Appellee.

No. 275, Docket 24849.

United States Court of Appeals Second Circuit.

Argued March 25, 1958.

Decided June 5, 1958.

Francis X. Byrn, New York City (James M. Estabrook, of Haight, Gardner, Poor & Havens, New York City, on the brief), for petitioner-appellant.

Leo F. Hanan, New York City (Thomas F. Keane, Brooklyn, N. Y., and Horace M. Gray, New York City, on the brief), for respondent-appellee.

Before CLARK, Chief Judge, LUMBARD, Circuit Judge, and DIMOCK, District Judge.

CLARK, Chief Judge.

This is an appeal from a decision, D.C.S.D.N.Y., 146 F.Supp. 617, and decree dismissing the petition of A/S J. Ludwig Mowinckels Rederi, which sought indemnification from Commercial Stevedoring Co., Inc., for the amount paid to Manuel Amador, an employee of Commercial, in settlement of his action for personal injuries sustained by him while unloading Mowinckels' ship, the Ronda. The major question at issue is whether the district court correctly interpreted an indemnification clause in the contract between Mowinckels and Commercial under which Commercial undertook to perform all stevedoring operations for Mowinckels at the port of New York.

Amador's libel against Mowinckels was originally dismissed on the merits by the district court on the ground that Commercial's gross negligence in unloading heavy steel strips was the sole cause of the accident which caused Amador's injuries. On appeal, however, we determined that despite Commercial's negligence Mowinckels was liable to the longshoreman. Amador v. A/S J. Ludwig Mowinckels Rederi, 2 Cir., 224 F.2d 437, certiorari denied A/S J. Ludwig Mowinckels Rederi v. Amador, 350 U.S. 901, 76 S.Ct. 179, 100 L.Ed. 791. The findings of the district court quoted in that opinion showed that Mowinckles had loaded the cargo in question in such a manner as to make the stow only "conditionally proper," i.e., it was improper unless certain steps were taken upon discharge, and that Commercial, after adequate notice of the situation, had failed to take the steps necessary to insure safe unloading. But we held nevertheless that Mowinckels could not avoid liability to the longshoreman for injuries caused by this condition simply by delegating the unloading operations to Commercial. We therefore remanded the case to the district court for a determination of Amador's damages and for an adjudication of Mowinckels' claim for indemnity which had been dismissed by the district court as moot. On retrial Amador's libel was settled with the approval of Mowinckels and Commercial, and Mowinckels' claim for indemnity was dismissed.

The indemnity clause in question provides as follows:

"The Stevedore [Commercial] performing any service required by this contract shall be responsible for any and all damage or injury to persons and cargo while loading or unloading

or otherwise handling or stowing the same and to any ship including its apparel and equipment, wharves, docks, lighters, elevators, cars, and carfloats used in connection therewith, through the negligence or fault of the Stevedore, his employees and servants."

The problem here involves the proper interpretation of this clause. Commercial contends that it must be construed strictly to limit liability for indemnification to those situations where its negligence alone is responsible for the accident or injury. And it argues that our decision on the previous appeal, which holds Mowinckels liable for Amador's injuries, negatives the possibility of a finding that its negligence was the sole cause of this accident. This construction of the clause runs counter to our interpretation of an identical indemnity provision in Porello v. United States, 2 Cir., 153 F.2d 605, where we held that it required full indemnification even where the indemnitee and indemnitor were joint tort-feasors. On the appeal in that case the Supreme Court held that the clause was ambiguous and reversed the indemnity award and remanded the case to the district court to determine the intent of the parties as to the meaning of the provision. American Stevedores, Inc., v. Porello, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011. On retrial, however, the stevedoring company chose not to submit evidence of intent, but to rely on the decision of the Supreme Court as a holding that the contract was ambiguous and, in the absence of further evidence, could not be construed. But the district court properly rejected this interpretation and, evidence of intent being thus lacking, concluded, as had we, that the provision required full indemnification for all damages caused in any part by the stevedore's negligence. Porello v. United States, D.C.S.D.N.Y., 94 F.Supp. 952.

All the courts involved in the Porello case assumed that the indemnity clause was part of a maritime contract to be construed in accordance with federal admiralty principles and not the state law which might apply under the usual conflicts of laws rules. But in the case at bar the district court came to an opposite conclusion and construed the idemnification provision under the law of New York, the place of contracting, because of the later decision of the Supreme Court in Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337, holding that a maritime insurance policy must be construed under the law of the state where made. The New York rule, developed in nonadmiralty cases, appears to bar any recovery under an ambiguous indemnity provision or at least requires a strict construction of the agreement against the indemnitee. Mostyn v. Delaware, L. & W. R. Co., 2 Cir., 160 F.2d 15, 19, certiorari denied 332 U.S. 770, 68 S.Ct. 82, 92 L.Ed. 355; Semanchuck v. Fifth Ave. & Thirty-Seventh St. Corp., 290 N.Y. 412, 49 N.E. 2d 507; Thompson-Starrett Co. v. Otis Elevator Co., 271 N.Y. 36, 2 N.E.2d 35. This rule, coupled with the Supreme Court's characterization of an identical indemnity provision as ambiguous, American Stevedores, Inc., v. Porello, supra, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011, led the district court here to dismiss Mowinckels' petition. Wisely the court went further, however, and heard evidence of intent in case we concluded that the Wilburn Boat rule was inapplicable to the contract at bar. It determined that the evidence of intent submitted by Commercial was unpersuasive and that if federal, and not state, law applied, Mowinckels would be entitled to indemnification under the decisions in Porello v. United States, supra, D.C.S.D.N.Y., 94 F.Supp. 952, and Muratore v. United States, D.C.S.D.N.Y., 100 F.Supp. 276.

A careful consideration of the Wilburn Boat case requires the conclusion that the Court intended to deal only with the limited area of maritime insurance and did not fashion a rule applicable to the maritime contract here involved. The provision in Art. III, § 2, of the Constitution extending the judicial power of the United States to "all Cases of admiralty and maritime Jurisdiction," although

silent as to the substantive law to be applied, has resulted in the application of a large body of general (or federal) maritime law, much of which has been created by federal courts sitting in admiralty. Where states have sought to enter the field by statute their efforts usually have been thwarted as infringements of a field reserved to Congress and the federal courts by the Constitution and as interferences with the uniformity requirements of the maritime law. See, e. g., Southern Pac. Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, and Gilmore & Black, The Law of Admiralty 43–46 (1957). Thus in the area of maritime torts, Pope & Talbot, Inc., v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143, clearly indicates that state law is irrelevant in determining liability for injuries to maritime workers. And in the field of maritime contracts generally, the cases are clear that in most situations federal, and not state, principles apply to determine the respective rights and duties of the parties. In fact the Supreme Court only recently discussed the implied promise of a stevedore to indemnify a shipowner for foreseeable damages resulting from the stevedore's breach of its implied warranty of workmanlike performance, Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491, and made no mention of state rules which either create or condition this liability. Obviously, therefore, the Court considered that these problems are governed solely by federal maritime principles. In this setting we examine the Wilburn Boat case.

The case concerned the effect to be given to the breach by petitioners of certain terms or warranties contained in a fire insurance policy issued on petitioners' boat. The policy contract was made and delivered in Texas, and under Texas law it was questionable whether the breaches of warranties rendered the policy unenforceable. The district court and the court of appeals, however, held that the insurance policy was a maritime contract and therefore that Texas law was inapplicable. Further they held that under "established" admiralty rules any breach of a policy warranty barred recovery; thus judgment was rendered for the respondent insurance company. At the outset of its opinion, the Supreme Court stated that "[t]his case raises questions concerning the power of States to regulate the terms and conditions of marine insurance contracts." Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 311, 75 S.Ct. 368, 369, 99 L.Ed. 337. After finding no judicially established admiralty rule governing such warranties the Court considered whether it should fashion one under its admitted power to do so. It then reviewed the judicial and legislative history of insurance regulation in the United States and concluded that this "warns us against the judicial creation of admiralty rules to govern marine policy terms and warranties." 348 U.S. 310, 316, 75 S.Ct. 368, 371.

Numerous factors impelled the decision thus indicated. For instance the Court said that "[t]he control of all types of insurance companies and contracts has been primarily a state function since the States came into being." Ibid. Further it showed that, even though United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, established that Congress has the power to regulate interstate insurance transactions, Congress clearly declared by statute that "the continued regulation of insurance by the States is in the public interest, and that silence on the part of Congress should not be construed to impose any barrier to continued regulation of insurance by the States." 348 U.S. 310, 319, 75 S.Ct. 368, 373. Moreover, "[t]he vast amount of insurance litigation in state courts throughout our history also bears witness that until recently state legislatures and state courts have treated marine insurance as controlled by state law to the same extent as all other insurance," and "[n]ot only courts, but Congress, insurance com-

panies, and those insured have all acted on the assumption that States can regulate marine insurance." 348 U.S. 310, 317, 75 S.Ct. 368, 372. Finally, in the Court's view, Congress, and not the Court, is best suited to replace state regulation of marine insurance with a comprehensive act if that be desired. Thus it decided that "[w]e, like Congress, leave the regulation of marine insurance where it has been—with the States." 348 U.S. 310, 321, 75 S.Ct. 368, 374.

Clearly the Court was balancing two divergent considerations—the continuance of traditional state power to regulate all kinds of insurance, including maritime insurance, as against the desirability of uniform admiralty rules. In our view the Court did not intend to rule on the propriety of state regulation of other types of maritime contracts. See Gilmore & Black, The Law of Admiralty 63 (1957). This conclusion is amply supported by the Court's treatment of a later case, Bisso v. Inland Waterways Corp., 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911, which involved the validity of a contractual provision exempting a towboat owner from liability for negligence. There the Court alluded to no state rules and decided the case solely on federally created maritime principles. We believe, therefore, that the Court in the Wilburn Boat case did not intend to change its original decision evidenced in American Stevedores, Inc., v. Porello, supra, 330 U.S.

446, 67 S.Ct. 847, 91 L.Ed. 1011, that the indemnity provision now under consideration is governed by admiralty rules.[1]

Hence our construction of an identical indemnity clause in Porello v. United States, supra, 2 Cir., 153 F.2d 605, to require indemnification, even though the indemnitee was also at fault, must control here in view of the similarity of facts. In both cases the shipowner created a potentially dangerous situation and the stevedore, after notice, failed to take the necessary steps to avoid injury, although it was under a duty to do so. We said in the Porello case that "[a]lthough the stevedore's default in that respect might not relieve the shipowner from liability to the injured workman, it would make it reasonable for the shipowner to insist that the stevedore alone bear the loss, and the quoted provision [the indemnity clause] was inserted in the contract for that purpose." 153 F.2d 605, 608.[2] The same reasoning applies here; and we believe, as did Judge Kaufman upon the remand of the Porello case, that, in the absence of evidence of intent to the contrary, it controls. Here the trial court also came to the same conclusion, holding that if federal law applies Commercial is liable to Mowinckels under the provision.

■ The parties vigorously contest Commercial's liability under its implied warranty of workmanlike performance. Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., supra, 350 U.S. 124, 76 S.Ct

1. Commercial argues that our decision in Jarka Corp. v. Hellenic Lines, 2 Cir., 182 F.2d 916, 919, requires that all stevedoring contracts, although maritime in nature, are to be construed in accordance with applicable state law. But that case involved whether or not a written offer to modify a contract term (the rate to be charged for loading hay) bound the offeror in the absence of consideration. A New York statute, Personal Property Law, McKinney's Consol.Laws, c. 41, § 33, provided that such options were binding and we decided that "even in its greatest ascendancy the Jensen rule [Southern Pac. Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086] would not have prevented application of such a state statute as this, which regulates a matter in which uniformity is not nec-

essary and which is not 'in conflict wth any essential feature of the general maritime law.'" Here, of course, the very provision under consideration already has been construed according to admiralty principles. Moreover, the need for uniform application of indemnity rules is well illustrated by the recent cases involving the liability of a stevedore for the breach of its implied warranty of workmanlike performance. Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491.

2. In fact the admiralty and New York rules governing this situation are not totally dissimilar. In Rice v. Pennsyl-

232, 100 L.Ed. 133; Weyerhaeuser Steamship Co. v. Nacirema Operating Co., supra, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed. 491. But we do not reach that issue because we decide that Commercial must indemnify Mowinckels under the express provision in their contract. Mowinckels is entitled to recover not only the amount paid Amador, but also its reasonable attorneys' fees, costs, and expenses in defending against his claim. Shannon v. United States, 2 Cir., 235 F.2d 457, 459.

Decree reversed for entry of decree for petitioner.

vania R. Co., 2 Cir., 202 F.2d 861, 862 (an admiralty case), Judge Swan, writing for the majority, stated that "[w]ith the generally accepted rule that contracts will not be construed to indemnify a person against his own negligence unless such intention is expressed in unequivocal terms, we are in complete accord." Judge Swan, of course, also wrote for the court in the Porello case, where the provision now under consideration was found clear under the circumstances, absent probative evidence of intent to the contrary.