Jacob Ark, J.
These are third-party actions brought by Rochester Gas & Electric Corp. (herein called Gas & Electric), third-party plaintiff against Richard J. Tanner and Robert H. Tanner, doing business as R. E. Tanner Line Construction Co. (herein called Tanners), third-party defendants. These actions stem from actions commenced by Howard Donnelly and Philip R. Kennard against Gas & Electric and George Tripp, Inc., by reason of injuries sustained by them on August 24, 1962 while they were employees of Tanners, electrical contractors, who were performing certain work for the utility on Buffalo Road in the Town of Chili, Monroe County.
The plaintiffs were working on a crossarm near the top of a Gas & Electric pole which was 35 feet in length, of which 29 feet were above the ground, when it broke near the ground level, propelling the plaintiffs across Buffalo Road and resulting in serious injuries to them.
The defendant, George Tripp, Inc,, was a contractor that installed sanitary sewers in the vicinity of the pole the previous year and the claim was made that a piece of its equipment called a backhoe, weighing about 45 tons, violently struck this pole, either causing or contributing to its fall the following year.
*857 The basis of liability against Gas & Electric was that the pole had decayed below the ground and that a proper inspection of it by the Gas & Electric would have revealed that condition.
The jury rendered a verdict in each action in favor of the plaintiff against both defendants. Gas & Electric cross-claimed against George Tripp, Inc., on the basis that if there was any negligence on its part it was passive and secondary in nature and that the negligence of George Tripp, Inc., was primary and active in nature. This was submitted to the jury upon the trial of the main actions which found that both Gas & Electric and George Tripp, Inc., were guilty of active negligence.
The third-party complaints of Gas & Electric against Tanners consisted of two causes of action, one based upon a written indemnity agreement and the other cause of action is based upon the claim that if there was any negligence on the part of Gas & Electric, it was passive and secondary to the negligence of Tanners which was primary and active in nature.
The third-party actions of Gas & Electric against Tanners were submitted to the court for decision. The jury in the cross claims of Gas & Electric against George Tripp, Inc., was instructed that “ [a]cts of omission constitute active negligence as well as acts of commission ” (Bush Term. Bldg. Co. v. Luckenbach S. S. Co., 9 N Y 2d 426, 430) and the jury’s verdict that Gas & Electric was actively negligent has a sound factual basis upon the evidence. It made no inspection of its poles, other than a visual observation of those encompassed within the area of a project, prior to the preparation of a Avork sketch. It omitted the making of recognized tests which require a probing beloAV the surface of the ground, Avhere decay, the most common cause of defective poles, could be ascertained. The court finds that Gas & Electric Avas an active tort-feasor and the causes of action against Tanners Avhich relate to active and passi\Te negligence are dismissed. There remain the causes of action based upon this clause of the agreement between the parties: “ In connection Avith the work being performed, or to be performed, for you, avc, the undersigned, agree to be responsible for and to indemnify you against any and all claims for injuries (including death) to our workmen arising in any manner out of the prosecution of the Avork, and any and all claims for injuries (including death) to others, and for damage to property resulting from the negligence of ourselves, our agents, employees, or subcontractors, and arising in any manner out of the performance of the work ’ ’.
The agreement is in the form of a letter by the contractor addressed to Gas & Electric, dated May 11, 1956, in which it *858 agreed to be responsible and indemnify Gas & Electric for claims in “ connection with present or future work to be performed for it”. From time to time, work orders were issued to the contractor to which the indemnity provision applied. At the time of the accident the contractors were performing under a work order issued on July 26, 1962. This is the date of the complete contract between the parties covering the project on which the contractors were working at the time their employees were injured.
The agreement covers three contingencies: (1) claims for injuries or death to the contractor’s workmen, (2) claims for injuries or death to others and (3) property damage. Following the damage to property there are the words: “ resulting from the negligence of ourselves, our agents, employees, or subcontractors ”. There is no use of the disjunctive “ or ” preceding claims for injuries or death to others and there is none preceding damage to property.
If the three contingencies are read disjunctively, claims by workmen would be in connection with the “ prosecution of the work”, while on the other hand, claims for injuries to others would have no condition, limitation or yardstick to measure the contractor’s liability, and only claims for property damage would be dependent upon the contractor’s or their subcontractor’s negligence arising “ out of the performance of the work ”. That part of the agreement covering claims for injuries to others, therefore, would be rendered entirely meaningless. “ It is a cardinal rule of construction that a court should not ‘ adopt an interpretation ’ which would operate to leave a ‘ provision of a contract * * * without force and effect ’ (Muzak Corp. v. Hotel Taft Corp., 1 N Y 2d 42, 46; Fleischman v. Furgueson, 223 N. Y. 235, 239) ”. (Corhill Corp. v. S. D. Plants, Inc., 9 N Y 2d 595, 599.)
The three areas of liability should be read conjunctively, which bottoms indemnification in each contingency upon the negligence of the contractor or their subcontractors, “ arising in any manner out of the performance of the work”. This interpretation merely eliminates the phrase “ arising in any manner out of the prosecution of the work ” in connection with claims for injuries to workmen, language that is identical with that at the end of the paragraph, except for the word “ performance ” instead of “ prosecution ”, at best, a distinction without a difference under the circumstances.
The third-party plaintiff offered in evidence a liability policy issued pursuant to the May 11, 1956 letter and testimony as to the intention of the parties in executing the agreement. The *859 fact that the policy included contractual liability, neither increased nor decreased Tanners’ liability under the agreement. It simply obligated the insurance company for such legal liability for which Tanners might be subjected according to its contract with Gas & Electric.
It is significant that this proof was offered by the party upon whom the obligation rests to prove that the contract expresses in unequivocal terms the intention to indemnify Gas & Electric against its own negligence. If there is any doubt as to the meaning of the terms employed, or uncertainty or ambiguity as to the meaning of the agreement it should be resolved in favor of Tanners, as it was Gas & Electric that prepared it. (Gillet v. Bank of America, 160 N. Y. 549, 554; Rentways, Inc. v. O’Neill Milk &Cream Co., 308 N. Y. 342, 348.)
The leading and most frequently cited authority on this subject is Thompson-Starrett Co. v. Otis Elevator Co. (271 N. Y. 36, 39) which involved an action by the contractor against the subcontractor to indemnify it “ against all claims to persons growing out of the execution of the work ’ ’. The court stated that:
‘ ‘ It is a general rule long established that contracts will not be construed to indemnify a person against his own negligence unless such intention is expressed in unequivocal terms ”. (Citing authorities; p. 41.)
‘ ‘ The mere fact that the accident occurred while the employees of appellant were engaged in work as defined in the contract is not sufficient to impose liability under the indemnity agreement. While it is true that the accident would not have occurred, had they not been so engaged, the work was not the cause of the accident. It was respondent’s own negligence which was the cause, and under such circumstances the language of the indemnity agreement was far too general in its nature to impose liability upon the appellant ” (p. 43).
An examination of the authorities that followed Thompson-Starrett Co. v. Otis Elevator Co. discloses that the wording of each agreement differs in some respect and that the indemnitee did not recover unless there was present the essential ingredient of the intention, expressed in unequivocal terms, to indemnify him against his own negligence.
In Walters v. Rao Elec. Equip. Co. (289 N. Y. 57, 60) the court held that the general contractor had no right of indemnification against the subcontractor based upon this clause of the contract: “ 22. Should any person, or persons, or property be damaged or injured by the Subcontractor, or by any person, or persons, employed under him, in the course of the performance *860 by him of this agreement or otherwise, whether by negligence or otherwise, said Subcontractor shall alone be liable, responsible and answerable therefor, and does hereby agree, to and with the said Contractor, to hold harmless and indemnify the Contractor of and from all claims, suits, actions, costs, counsel fees, expenses, damages, judgments or decrees by reason thereof.” (Emphasis supplied in opinion.)
The court said that under the wording of this paragraph the subcontractor assumed liability for the acts of any person employed by him which resulted in injury and that any intention to extend the liability of the subcontractor beyond that limit would have to be unequivocally expressed. “No such intention is here revealed. The sub-contractor was not liable for the negligence of the general contractor even though concurrent” (p. 61).
Tanners’ liability was similarly dependent upon the negligence of themselves, their agents, employees (and subcontractors, not here involved).
In Semanchuck v. Fifth Ave. & 37th St. Corp. (290 N. Y. 412) the owner’s cross claim against the contractor for indemnity in an action brought by an employee of a subcontractor was dismissed under this provision in the contract between them: “Article 28 — Indemnity: In addition to the liability imposed upon the contractor by law, and by article 27, which liability is not impaired or otherwise affected hereby, the Contractor hereby assumes the obligation to save the Owner harmless and indemnify him from every expense, liability or payment, by reason of any injury to any person or persons, including death, resulting from any action or operation under this contract.”
In the Walters and Semanchuck cases, violations of section 241 of the Labor Law on the part of the contractors were involved, but as pointed out in Jordan v. City of New York (3 A D 2d 507, 509, affd. 5 N Y 2d 723): “ The test of clear and unequivocal intent to indemnify is the same whether the active negligence is one arising from common law or the violation of a statutory duty.”
Jordan is illustrative of an agreement that is sufficient to indemnify one against his own active negligence. Under subdivision (a) of paragraph 14 of the agreement the contractor, the indemnitor, agreed to (p. 511) “ be solely responsible ” and “ fully protect and indemnify” the City of New York, whether damages or injuries ' ‘ be attributable to the negligence of the Contractor or his employees or otherwise” and paragraph 15 provides that the liability of the contractor ‘ ‘ is absolute and is not dependent upon any question of negligence on his part *861 or on the part of his agents, servants or employees ’ ’. Yet, notwithstanding these provisions, two of the Appellate Division Justices dissented on the ground that the agreement did not contain the required unequivocalness and suggested even more precise language (p. 513).
In Marks v. New York City Tr. Auth. (11 A D 2d 993, affd. 13 N Y 2d 620) personal injuries were sustained by an employee of the contractor, who recovered a judgment against the New York City Transit Authority, which in turn recovered a judgment upon its cross complaint against the contractor, the third-party defendant, based upon an indemnity agreement that provided: “ The Contractor shall be solely responsible for all injuries to persons * * * occurring on account of or in connection with the work hereunder, and shall indemnify and save harmless the Authority from liability upon any and all claims on account of such injuries * * * or on account of any neglect, fault or default of the Contractor * * *. The liability of the Contractor under this paragraph is absolute and is not dependent upon any question of negligence on his part or on the part of his agents, servants or employees, and the neglect of the [Authority] to direct the Contractor to take any particular precaution or to refrain from doing any particular thing shall not excuse the Contractor.”
In reversing the judgment and dismissing the third-party complaint, the Appellate Division said (p. 994): “ On the appeal by Metro [third-party defendant] from the judgment on the third-party complaint, we find that the indemnity agreement, upon which the Authority relied, falls short of manifesting a clear and unequivocal intent to protect the Authority against the consequences of its own negligence. (Jordan v. City of New York, 3 A D 2d 507, affd. 5 N Y 2d 723.) While there are similarities in the agreement in Jordan and that in the instant case, there is absent the all-embracing language in J or dam upon which the intent to indemnify against the negligence of the city was spelled out ” (p. 994).
In General Elec. Co. v. Hatzel & Buehler (19 A D 2d 40, 42, affd. 14 N Y 2d 639) the plaintiff paid a judgment by reason of an action by one Bertram, an employee of the defendant subcontractor which he recovered for personal injuries sustained by him- It was against the General Electric Co., New York City Transit Authority and an engineering firm. Upon appeal in Bertram’s action the judgment against General Electric was reversed (Bertram v. New York City Tr. Auth., 16 A D 2d 779), and the complaint against it was dismissed. It was required, however, to pay the judgment under an agreement with the *862 codefendants that provided for absolute indemnity. It then brought this action against the defendant subcontractor based upon an agreement that provided that the defendant ‘ ‘ agrees to hold harmless and indemnify [General Electric] from all loss, damage [and] costs * * * on account of personal injuries (including death) * * * resulting from performance of the work covered by this contract.” The court held (p. 42): “ If plaintiff had been found negligent in the Bertram action it would have been denied recovery against defendant because there may not be found in the subcontract an intent expressed in unequivocal terms to indemnify General Electric against its own negligence. (Thompson-Starrett Co. v. Otis Elevator Co., 271 N. Y. 36, 41.) ” (Emphasis supplied.)
Gas & Electric relies upon Centino v. Isbrandtsen Co. (11 N Y 2d 690, cert. den. sub nom. Universal Term. & Stevedoring Co. v. Isbrandtsen Co., 370 U. S. 912) in support of its position.
In that case the plaintiff was an employee of a ship scaling and servicing company which had been employed by the defendant and third-party plaintiff, as owner, to clean its ship. He fell through an open hatchway, causing him personal injuries for which he commenced an action against the defendant, which impleaded the stevedoring company as a third-party defendant, under an indemnity contract with the owner to unload the ship. The stevedoring company did not replace the hatchway cover through which the plaintiff fell. During the trial the negligence cause of action was withdrawn and the case was submitted to the jury on the sole issue of seaworthiness.
The jury found in favor of the plaintiff and the court directed judgment over in favor of the third-party plaintiff against the third-party defendant upon this contract: “The contractor [Universal] will indemnify and hold harmless and defend Isbrandtsen Company, Inc., as owner and charterer of any vessel owned or chartered by it * * * against any and all claims or demands arising out of bodily injury * * * which claims are made by or on behalf of (1) any employee of the contractor or (2) any other person, provided that such injury or death of such other person shall have been due to the contractor’s [Universal] operation ’ ’.
The Appellate Division (13 A D 2d 977, 978) reversed the judgment on the ground “ that plaintiff’s injury was not due to the stevedore’s operation within the meaning of the contract between it and the shipowner ”. The Court of Appeals reinstated the judgment stating (p. 692): “ In our view, the injuries of plaintiff were ‘ due to [respondent’s] operation ’, irrespec *863 tive of fault, and Trial Term was correct in holding respondent liable under the broad provisions of its indemnity agreement ”.
Centino did not involve the construction of an agreement to indemnify a person against his own negligence. The question of negligence was out of the case. Neither the trial court’s memorandum of opinion set forth in the record on appeal nor the decisions of the appellate courts refer to agreements which seek to indemnify persons against their own negligence. That was a maritime contract and was construed in accordance with the authorities pertaining to Federal admiralty practice and not State law. “A stevedoring contract is maritime” (American Stevedores v. Porello, 330 U. S. 446, 456), and “ in the area of maritime law * * * Federal law is controlling ”. (Merriweather v. Boland & Cornelius, 6 N Y 2d 417, 421.) (Also, see, A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., 256 F. 2d 227, 230 [C. A. 2d].)
Although an indemnity contract need not “contain express language referring to the negligence of the indemnitee ’ ’, nevertheless, it must “ express a clear and unequivocal intent to indemnify a party against his own negligence ” (Jordan v. City of New York, 3 A D 2d 507, 509, supra). The agreement before the court fails to plainly show such an intention.
In any event, the contract between the parties covering the project, which included the defective pole, went into effect on July 26,1962, and from the evidence it is clear that it was unsafe for a considerable period of time prior to that date, without having been subjected to an adequate test by Gas & Electric. Even construing the indemnity agreement in such a manner as to give the third-party plaintiff the benefit of every doubt as to its meaning, it is difficult to see how the parties intended to hold the contractors answerable for a liability arising out of a dangerous condition existing prior to the making of the contract. (Cf. Russell v. New York State Elec. & Gas Corp., 11 A D 2d 298.) The third-party complaint is dismissed.